HINKLE v. BOARD OF COM'RS OF OKLAHOMA COUNTY et al.

No. 31542. May 1, 1945.

Rehearing Denied July 9, 1946.

*170 P. 2d 544.*

John W. Mee, of Oklahoma City, for plaintiff in error.

Gilliland, Ogden, Withington & Shirk, by W. R. Withington, of Oklahoma City, for defendants in error.

BAYLESS, J. This appeal by Herman Hinkle from a judgment of the district court of Oklahoma county in favor of the board of county commissioners of Oklahoma county et al. raises questions relating to tax sales and resales. The facts are not in dispute and the controversy involves issues of law only.

The real estate involved is two city lots. In 1930 a paving district was created which included these lots and the installments for the payment of the assessments matured in 1930 to 1939. It is stipulated that the annual installments for 1930 to 1934, inclusive, were paid, but no showing is made concerning the payment of the ad valorem taxes during that period. The record is silent as to the 1935 installment and ad valorem taxes. It is stipulated that an annual sale was held in 1936, but it is not shown definitely what delinquent ad valorem taxes and special assessments were covered in this sale. The 1937 and 1938 installments on the special assessments were not paid when they became due, and there is no showing in the record concerning the ad valorem taxes for those years. In 1939 these lots were sold at the annual sale for the delinquent 1939 installment on the special assessments on each and were bid in by the county for a lack of bidders and tax sale certificates Nos. 535 and 536 were issued to Oklahoma county. A resale was conducted in 1940, the notice therefor stating that it covered delinquent ad valorem taxes for 1935 and prior years and all sewer assessments for 1936 and prior years. At this resale Temple G.

Thompson purchased lot 15 for $21 and lot 16 for $50, and after receiving his resale deed, conveyed the lots by quitclaim deed to R. O. Primm, who is a party to this action and appeal. July 2, 1941, Herman Hinkle purchased tax sale certificates 535 and 536 from Oklahoma county and had indorsed thereon the last quarter of the 1939 and all of the 1940 ad valorem taxes and the delinquent installments on the special assessments for 1937 and 1938.

Hinkle instituted the action against Oklahoma county, Oklahoma City, certain county and city officials, R. D. Farmer, and John J. Harden, as owners of the bonds issued by Oklahoma City on the paving district to be paid by the special assessments and annual installments hereinabove referred to, and R. O. Primm, the claimant of title to the lots through the resale above mentioned.

The amended petition filed by Hinkle is in the alternative, that is to say, he claims (1) that the tax sale certificates Nos. 535 and 536 were invalid for a number of reasons and that the assignment of them, including the indorsement thereon of the other delinquent ad valorem and special assessment above mentioned, did not transfer anything to him and by reason thereof he is entitled to a refund of his money, and that Oklahoma county, not having set up a fund from which it could make this refund, should make a refund from the money paid by him to it, and in order to do so and to insure the retention of such money, he sought to prevent the disbursement of the money by the various county and city officials above named until his rights could be adjudicated and he could establish his right to have this money returned to him; or (2) if (a) the money he had paid in should be ordered paid to the city to be paid to the bondholders to discharge the bonds, that he be subrogated to the "rights of the paving liens and assessments not canceled by the 1940 resale deed" and for "foreclosure of same," or (b) if the tax sale certificates be held valid, that he have all the rights called for in said "certificates and by law on said real estate."

The city and its officials who are defendants herein filed an answer in which they denied that the tax sale certificates were invalid and denied that they had the sum of money alleged by plaintiff, but admitted having $623.15 paid by the county treasurer to them as the result of the sale of the tax sale certificates to Hinkle as aforesaid, and alleged that plaintiff was not entitled to recover back from them any of this money. The county and county treasurer filed separate general and specific denials. Farmer and Harden filed an answer in which they asserted the validity of the tax sale certificates and the sale thereof to Hinkle, alleged that they are the owners and holders of the bonds issued on said paving district, and were entitled to the money in the hands of the city treasurer, and prayed for relief accordingly. Primm filed an answer in which he adopted the allegations of Hinkle's pleadings "so far as they allege that said certificates are null and void," and alleged that they constituted no lien or right against the lots in question, and asked that Hinkle have judgment for the return of his money, and that the certificates be canceled as a lien upon the lots.

The trial court rendered judgment for Oklahoma county and Oklahoma City and their respective officers and Farmer and Harden. The trial court further rendered judgment in favor of Primm quieting his title insofar as the 1939 tax sale certificates Nos. 535 and 536 were concerned because they were canceled by the 1940 resale. The court further rendered judgment finding that the lien of the special assessment for the installments for the years 1937, 1938, and 1939 were not canceled by the 1940 resale, and that they constitute and remain valid special assessment liens against the property herein. Judgment was rendered further to the effect that the 1939 and 1940 ad valorem taxes were not canceled and that Hinkle had a lien therefor but was denied foreclosure thereof. Hinkle appealed and Primm cross-appealed.

It can be seen from the foregoing that

Hinkle introduced no evidence tending to show that the annual sale in 1936 was invalid, and his contention that his evidence discloses that the 1939 sale and the 1940 resale are invalid is also without merit. It is not alleged or shown whether these lots are improved or unimproved, but no contention of illegality of the sale based on the amount bid is made. We assume they are unimproved.

Thus Hinkle's argument respecting the validity, or rather the existence, of the 1939 tax sale certificates No. 535 and No. 536 turns on the effect of the 1940 resale on the 1939 sale. In Shnier v. Vahlberg, 188 Okla. 471, 110 P. 2d 593, as applied to vacant city lots, we expressly held that all prior and subsequent delinquent ad valorem taxes are canceled by resale under 68 O.S. 1941 § 432 et seq. (art. 31, ch. 66, S.L. 1939). Under this decision the portion of the 1939 ad valorem taxes indorsed were canceled by the resale, but the 1940 taxes were not because they were not due or delinquent at the time of the resale.

This brings us then to the issue of the effect of a resale upon special assessments, the annual installments of which are delinquent.

We are cited Board of Com'rs of Seminole County v. City of Wewoka, 191 Okla. 142, 127 P. 2d 826, and its companion case, Board of Com'rs of Seminole County v. City of Wewoka, 191 Okla. 233, 129 P. 2d 83, wherein we expressly held that where the county advertises and sells land for the delinquent ad valorem taxes without at the same time advertising and selling for the delinquent installments of special assessments, the liens of the special assessments are not affected. This carries with it the corollary that if the delinquent installments of the special assessments are advertised and sold at annual sale they are thereafter subject to all of the provisions of our tax sale laws and, if the county purchased for the want of bidders at the annual sale, the county could advertise and sell at resale. This is the conclusion reached in Board of Com'rs v. City of Shattuck, 140 Fed.

2d 67, where all delinquent installments had been included in one annual sale and indorsed annually thereafter.

There are fact differences between the Wewoka cases, supra, and this case, one of which we lay aside as not affecting the rule to be applied here. In this case there had been no effort prior to the sale or resale to foreclose the lien by court action as was the fact in the Wewoka cases. In the Wewoka cases it does not appear that any of the three delinquent installments had ever been included in the advertisement for an annual sale, and if they had been so included, they were not included in the 1939 tax resale involved there. The emphasis there was laid on their non-inclusion in the notice of the 1939 tax resale. In this case the 1936 delinquent installment had been advertised when the land was sold at the annual tax sale to the county for want of bidders, and being held by the county for more than two years unredeemed, was subject to resale in 1940. The 1937 and 1938 delinquent installments are not shown to have been included in an annual sale. The 1939 delinquent installment was included in the annual sale in 1939, to the county for want of bidders. At the time of the resale in 1940 it had not been held long enough to be alone the basis of a resale. The issue before us, then, is could it be included in the resale in 1940 since it was not advertised?

The plain difference between the 1936 sale covering delinquent installments of special assessment insofar as the 1940 resale is concerned is this: The 1936 sale was advertised to be sold at resale whereas the 1939 sale was not.

Under the Wewoka cases this is sufficient to prevent the 1940 resale affecting the 1939, 1938, and 1937 delinquent installments of the special assessment.

Thus, in 1941, when Hinkle purchased the 1939 sales certificates from the county, these certificates still had life and Hinkle got title thereto. We are of the opinion that under 68 O.S. 1941 § 388, Hinkle had legal right to pay any delinquent ad valorem taxes and delinquent installments of the special assess-

ments and have them indorsed on his certificates. Board of Com'rs v. Shattuck, supra. However, the portion of the 1939 ad valorem he had indorsed was without effect, for under Shnier v. Vahlberg, supra, they were canceled by the 1940 resale. However, 68 O.S. 1941 § 390 is statutory authority for recovering this money from the county. The 1937, 1938, and 1939 installments and 1940 ad valorem are validly represented by the certificates.

It is clear under our statutes and decisions that when a delinquent installment is certified to the county treasurer and sold as delinquent ad valorem taxes are sold, such installment so sold and evidenced by a tax sale certificate is enforceable by taking a deed if an individual purchases or takes assignment of the county's certificate; or by resale if the county buys the certificate and retains it. There is no statutory authority for foreclosing by court action the rights acquired through a tax sale certificate. The lien of the special assessment and its annual installments, under the 1923 act, may be foreclosed by action, 11 O.S. 1941 § 107, or the land may be sold for the delinquent installment by the county treasurer and assigned, as in this case, in which instance the money received (as from Hinkle) goes to pay the delinquent installment, which is thereby discharged, but the person who purchased the tax sale certificate and had other delinquencies indorsed thereon does not thereby become subrogated to the action to foreclose the lien. The purchaser has the right to apply for a deed just as any other individual tax certificate holder has.

The judgment of the trial court is affirmed in part and is reversed in part as above indicated, and the cause is remanded to the trial court for further proceedings and the entry of judgment in conformity with the views expressed herein.

HURST, V.C.J., and RILEY, OSBORN, WELCH, CORN, and DAVISON, JJ., concur. GIBSON, C.J., concurs in conclusion.