CONCHO WASHED SAND CO. v. SALLSTROM et al.

No. 31602. Feb. 20, 1945.

Rehearing Denied April 3, 1945.

*157 P. 2d 176.*

Falkenstine & Fisher, of Watonga, for plaintiff in error.

R. H. Morgan, of Watonga, for defendants in error.

RILEY, J. This is an appeal from a decree quieting title to and a judgment for possession of certain lands in Blaine county. The parties are referred to as in the trial court.

Plaintiff Sallstrom based his title to the land upon a resale deed by the county treasurer to Blaine county, dated May 27, 1941; a county commissioners' deed, dated May 4, 1942, from the county to W. L. Haynes; and a quitclaim deed, dated May 13, 1942, from Haynes to plaintiff Herbert S. Sallstrom. Haynes was later made a party plaintiff. The land involved consists of two tracts: the N.W.¼ of N.W.¼, and the E.½ of N. W. ¼, sec. 35, twp. 19 N., R. 12 W.I.M.

Defendants' answer assailed the validity of the original sale of the 40-acre tract to the county, in that the sale for the 1937 taxes was for less, and the sales for the years 1936, 1938, 1939, and 1940 were for more than the taxes, penalties, interest, and costs. Defendants assailed the original sale of the 80-acre tract to the county in that the sales for the years 1937, 1938, and 1940 were for more than the taxes, interest, penalties, and costs. Defendants also assailed the validity of the resale of the land to the county upon the ground that the sale was for less than the taxes, penalties, interest, and costs due thereon.

Defendants also allege that the purported conveyance by Haynes to Sallstrom was champertous and void for the reason that Haynes had never been in possession of the land·and had never collected or received any of the rents or profits therefrom. Trial was to the court, without a jury, resulting in a decree quieting a title in plaintiff and a judgment for the possession of the land involved.

At the trial, the evidence disclosed that at the time the land was sold by the county to W. L. Haynes, and at the time Haynes conveyed to Sallstrom, Sallstrom was deputy county treasurer of Blaine county.

Defendant first contends that the sale of the land by the county to Haynes and the subsequent conveyance by Haynes to Sallstrom constituted an indirect sale of county property to a deputy county treasurer, prohibited by 21 O. S. 1941 § 344, which provides:

"Every public officer, being authorized to sell or lease any property, or make any contract in his official capacity, who voluntarily becomes interested individually in such sale, lease or contract, directly or indirectly, is guilty of a misdemeanor."

Defendant asserts that the evidence clearly shows an indirect sale of the land by the county to Sallstrom, a deputy county treasurer, and that such a sale is forbidden by law. There is no evidence whatever to connect Sallstrom with the sale of the land to Haynes. The record shows that the sale by the county was initiated by W. H.

Dewesse. He made the original bid and pursuant thereto notice was duly published and May 2, 1942, was designated as the date bids were to be received and the sale made. On that date Haynes appeared and made the highest competitive bid, namely, $100. The bid was submitted to and approved by the board of county commissioners and its chairman was directed to convey the property to Haynes, which he did on the same day. Thereafter, May 13, 1942, Haynes conveyed by quitclaim deed to Sallstrom. There is no evidence that Sallstrom even suggested to Dewesse that he should initiate the proceedings to buy the land from the county. There is no evidence that Sallstrom ever suggested to Haynes to bid on the land or that he knew that Haynes was intending to bid on the land. The record before us does not disclose that Sallstrom had any interest, direct or indirect, in the sale of the land by the county to Haynes at the time the sale was made. The assertion that the record shows an indirect sale of the land by the county to Sallstrom is not sustained by the record. We cannot say from the record that there was a violation of law in making the sale of the land by the county to Haynes or by the conveyance of the land by Haynes to Sallstrom.

It is next contended that the property was sold to the county at resale for less than the amount of taxes, interest, penalties, and costs, and that the resale deed to the county is invalid for that reason.

The evidence shows that the land was sold to the county at resale for the exact amount of taxes, interest, penalties, and costs shown by the tax records in the office of the county treasurer and as advertised. After this action was commenced, defendants employed Ivan Kelley, who testified as an accountant or auditor. He recalculated the delinquent taxes, interest, penalties, and costs against the land for the several years for which it was sold. He found no error in the principal amount of taxes for any year. His recalculation of interest, penalties, and costs showed a few cents error in the amount of interest for most of the years from 1936 to 1940, inclusive. For some years, the correct amount was shown to be a few cents more and for other years a few cents less than that shown on the books of the county treasurer. As finally computed by the witness, the total amount of delinquent taxes, interest, penalties, and costs on the 40-acre tract, as shown by the resale tax deed and as advertised, was $36.45. The witness testified that as recalculated by him, the correct amount was $36.56; and as to the 80-acre tract, the total amount, as shown by the resale deed and as advertised, was $70.95. As recalculated by the witness, the correct amount was $71.24. According to the testimony of the witness, the two tracts were sold to the county at resale for 40c less than the correct amount.

The question here presented was considered in Bramble v. Caywood, 193 Okla. 668, 146 P. 2d 587, and Hight v. Collingsworth, 194 Okla. 507, 153 P. 2d 96. In the latter case it is held:

"A resale tax deed based upon the 1939 tax resale is not invalid because the property was advertised at the resale for less than the amount of taxes, interest, penalties and costs assessed against the property and delinquent at the time of the resale."

See, also, Meyers v. Lackey, 194 Okla. 586, 153 P. 2d 1020.

Finally, it is contended that the judgment is contrary to law because the uncontradicted evidence shows that Haynes was never in possession of the land and had not received any of the rents and profits therefrom, and that his deed to Sallstrom was champertous and void under 21 O. S. 1941 § 548.

The contention cannot be sustained. The action was commenced by Sallstrom alone. Defendant answered, raising the question of champerty. Thereupon plaintiff Sallstrom obtained leave to amend by making his grantor, Haynes, a party plaintiff and, by amended petition, joined Haynes as a party plaintiff. In Crawford v. LeFevre, 177 Okla. 508, 61 P. 2d 196, where the plaintiff

claimed under a quitclaim deed alleged by defendant to be champertous, it is held:

"A grantee who holds deeds made in violation of champerty statute, section 1940, O.S. 1931, may maintain action to recover lands conveyed in such deed in his name and in the name of his grantor, and on objection by adverse party to such grantee's maintaining such action in his name he may move to have his grantor made .party plaintiff, or if dead, his legal representative, and it is not error for the trial court to grant such motion when timely made."

See, also, Gannon v. Johnston, 40 Okla. 695, 140 P. 430; Brady v. Mc-Crory, 108 Okla. 40, 233 P. 734.

Furthermore, defendants, by cross-petition, sought to have title quieted in them. In Gafford v. Davis, 58 Okla. 303, 159 P. 490, and in Davenport v. Wolf, 59 Okla. 92, 158 P. 382, it is held:

"Though the plaintiffs in a suit for the cancellation of certain deeds and to quiet title were not in possession of the lands, the title to which was involved, and could not for that reason maintain the suit, yet ·where the defendant seeks affirmative relief, and asks to have his own title quieted, this gives the court jurisdiction of the whole controversy."

—and:

"It is no objection to the jurisdiction of the court in an action to quiet title that plaintiff is not in possession, where defendant files a cross-petition asking that his own title be established and quieted, as the court is thereby given jurisdiction of the entire controversy."

Under the rule there stated, when defendants filed their cross-petition to quiet title in them, the court was given jurisdiction of the whole controversy.

Affirmed.

HURST, V.C.J., and RILEY, OSBORN BAYLESS, WELCH, CORN, and DAVISON, JJ., concur. GIBSON, C.J., concurs in conclusion. ARNOLD, J., dissents.